IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

IVÁN VILLA,

  Petitioner,

v.                      CV 13-1226 RB/WPL

J. TIM MORGAN, Warden,
Torrance County Detention Facility,

  Respondent.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Petitioner Iván Villa is, legally speaking, a murderer; the question is, is he the murderer Mexico is looking for? For over seven years now, Petitioner has been imprisoned in this state for, among other things, the 2005 murder of his wife in Ruidoso, New Mexico. Now the Republic of Mexico seeks to prosecute him for the aggravated homicide of a teenage girl in 2006. Though a magistrate judge in the District of New Mexico certified his extradition for the latter charge, Petitioner insists that this proceeding was flawed due to altered evidence and that another man may be responsible for the crime.

Because he cannot directly appeal his extradition certification, Petitioner now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1.) Respondent argues that Petitioner has failed to show that he is entitled to the writ (*see* Response Brief, Doc. 8), a position that Petitioner strenuously opposes (*see* Reply Brief, Doc. 11). However, because evidence exists giving probable cause to believe that Petitioner is the person whom Mexico seeks, a writ of habeas corpus may not issue here. Accordingly, I recommend that the Court deny the Petition for a Writ of Habeas Corpus in this action.

**FACTUAL AND PROCEDURAL BACKGROUND**

On the evening of September 29, 2006, a man known as Manuel Villa allegedly strangled his girlfriend, fifteen-year-old Fátima Villa Sánchez, inside his home in Santa Maria Del Oro in the State of Durango, Mexico. That afternoon, Manuel Villa had allegedly called Karina Carrete Vásquez, a friend of Fátima's, and asked her to tell Fátima that he was leaving the city. Carrete later told authorities that she conveyed this message, that Fátima and Manuel Villa then spoke by phone, and that Fátima told Carrete that she was going to visit Manuel Villa at his home. Fátima's sister had also learned from a cousin of Manuel Villa's that the latter urgently wanted to see Fátima because he was going to leave for the United States and he wanted to say goodbye. When Fátima's parents could not find her that evening, her sister told them that she was afraid Fátima had run off to Ciudad Juárez with her boyfriend. The parents visited Manuel Villa's home, where they found Fátima's car parked outside. Fátima's father eventually forced open the door of that house and entered, where he found Fátima's lifeless body.

Within several days, Durango authorities had established that Manuel Villa was also known by several aliases, including Manuel Galván Ontiveros and Iván Villa. In June 2007, an arrest warrant was issued in the State of Durango for the arrest of Manuel Villa, also known as Manuel Galván Ontiveros and Iván Villa, for aggravated homicide.[1]

Meanwhile, Petitioner Iván Villa entered a plea of no contest in state court in February 2007 to charges of second degree murder and kidnapping. The charges stemmed from the May 2005 murder of Petitioner's nineteen-year-old wife in Ruidoso and the kidnapping of his wife's child.[2] Petitioner has been serving a twenty-four-year prison sentence since his conviction.

---

[1] Manuel Villa is also accused of raping Fátima in the same warrant. Mexico does not seek Petitioner's extradition on the rape charge.

[2] *See State v. Villa*, No. D-1226-CR-200600192.

Pursuant to a Diplomatic Note from the Republic of Mexico, the United States filed a Complaint for Arrest for Extradition in May 2013, seeking the extradition of Petitioner for the aggravated homicide allegedly committed by the person known as Manuel Villa. *See In re Extradition of Manuel Villa*, No. 13-mj-1872-LFG (hereinafter "Extradition Proceedings"), Doc. 1 (D.N.M. May 30, 2013). According to the Complaint, Mexico provided materials to the United States that includes a lengthy description of the facts of the case and a photograph of Manuel Villa that was positively identified by two friends of the victim at initial identification proceedings. That photograph is not attached to the Complaint, and it is unclear whether or where that photograph appears in exhibits later submitted by Mexico or the United States. Petitioner was remanded to federal custody in June 2013.

On July 3, 2013, the Office of the State General Prosecutor in Durango held identification proceedings at which Carrete appeared as a witness. Carrete was shown a six-person photo array and identified Manuel Villa as the person depicted in Photo No. 2 of the array.

The following month, the State of Mexico submitted a Formal International Extradition Request of Manuel Villa, a.k.a. Manuel Galván Ontiveros, a.k.a. Manuel Villa Galván, a.k.a. Manuel Villa Ontiveros, a.k.a. Iván Villa ("the Extradition Request"),[3] along with a packet of documents supporting the Extradition Request.[4] Included in the document packet was Exhibit 12, consisting of both a summary of the identification proceedings conducted July 3, 2013, and a copy of the photo array said to have been used at that time. Also included was Exhibit 14, a photograph with the label "Manuel Galvan Ontiveros," an alias of Manuel Villa.

---

[3] Both the original Spanish version and the unofficial English translation of the Extradition Request appear in Document 14 of the Extradition Proceedings.

[4] The official Spanish version of these documents has been filed as Document 17 in the Extradition Proceedings, while the official English translation of these documents has been filed as Document 16 in the same action.

The Honorable Lorenzo F. Garcia, United States Magistrate Judge, held an extradition hearing in November 2013. *See* Extradition Proceedings, Doc. 22 (D.N.M. Nov. 14, 2013). At the hearing, the parties conceded that Photo No. 2 in the photo array attached to Exhibit 12 was identical to a New Mexico Corrections Department booking photo of Petitioner. (*See* Doc. 1 Ex. 6.)[5] However, Petitioner asserted that language in the Extradition Request suggests that the photograph introduced as Exhibit 14 was used in the photo array instead of the booking photo and that the array attached to Exhibit 12 must have been altered after the July 3 identification proceedings. Petitioner also stated that Exhibit 14 did not depict him and introduced witness testimony to that effect. The United States argued in response that Carrette had identified Photo No. 2 in the photo array and that the person depicted in the photo array submitted by Mexico was undeniably Petitioner.

Following the hearing, Judge Garcia issued findings from the bench that he had authority to preside over the Extradition Proceedings, that he possessed jurisdiction over Petitioner, and that the United States and Mexico are signatories to a properly ratified treaty providing for extradition of alleged felons from one signatory to another. Judge Garcia also found that criminal proceedings had been commenced against Manuel Villa, that a probable cause determination had been held in Durango, and that Manuel Villa goes by numerous aliases, including Manuel Galván Ontiveros and Iván Villa. Further, he found that Carrete had identified Petitioner as Manuel Villa by selecting Photo No. 2 from a six-person photo array and that witness testimony had confirmed that the same photograph in the array before him depicted Petitioner.

Based on these findings and the evidence before him, Judge Garcia concluded that there was sufficient identification evidence to believe that Petitioner was the person sought by Mexico,

---

[5] The booking photo is publicly accessible using the New Mexico Corrections Department's Offender Search page, http://corrections.state.nm.us:8080/OffenderSearch/index.jsp.

4

and he granted Mexico's request for Petitioner's extradition. These findings and conclusions are reflected in an Amended Certificate of Extraditability and Order of Commitment ("Amended Certificate") filed subsequent to the hearing, wherein Judge Garcia ordered that Petitioner remain committed to federal custody pending final disposition of the matter by the Secretary of State. *See* Extradition Proceedings, Doc. 28 (D.N.M. Jan. 9, 2014). Petitioner initiated the instant habeas action on December 26, 2013.

## LEGAL STANDARDS

The "limited" role of federal courts in extradition proceedings is described well by the District of Colorado in *In re Extradition of Fuentes*, which Judge Garcia quoted in full in his Amended Certificate:

> It is the prerogative of the executive branch to conduct foreign affairs. *Martin v. Warden, Atlanta Penitentiary*, 993 F.2d 824, 828–829 (11th Cir.[ ]1993). In an extradition proceeding, the Article III branch's role is limited. *Id.* The Court is to determine the sufficiency of the request to extradite under the applicable treaty provisions, *id.*; 18 U.S.C. §§ 3184, 3186, which is accomplished through an extradition hearing pursuant to 18 U.S.C. § 3184. If the Court decides that the elements necessary for extradition are present, it certifies the authority to extradite the fugitive, making written factual findings and conclusions of law. *Shapiro v. Ferrandino*, 478 F.2d 894 (2d Cir.[ ]1973). This certification is provided to the United States Department of State for disposition. The Secretary of State makes the ultimate decision as to whether to surrender the fugitive to the requesting country. *See Martin*[], 993 F.2d at 829 ("The Secretary exercises broad discretion and may properly consider myriad factors affecting both the individual defendant as well as foreign relations, which the extradition magistrate may not.").

*In re Extradition of Fuentes*, No. 13-mj-01026-KLM, 2013 WL 2153537, at *1 (D. Colo. May 16, 2013) (unpublished); *see also* Amended Certificate at 1-2.

There are no provisions for direct appeal of an extradition certification; once the certification has issued, the legality of one's confinement can only be challenged through a petition for a writ of habeas corpus. *See Peters v. Egnor*, 888 F.2d 713, 716 (10th Cir. 1989) (citing *Collins v. Miller*, 252 U.S. 364, 369 (1920)). And on habeas review, the Court's role is

narrower still. *See id.* at 716 (citing *Greci v. Birknes*, 527 F.2d 956, 958 (1st Cir. 1976)). The Court is confined to determining (1) whether the magistrate judge that issued the extradition order had jurisdiction; (2) whether the offense charged is within the treaty allowing for extradition; and (3) "by somewhat liberal construction, whether there was any evidence warranting finding that there was a reasonable ground to believe the accused was guilty." *Smith v. United States*, 82 F.3d 964, 965 (10th Cir. 1996) (citation omitted); *see also Fernandez v. Phillips*, 268 U.S. 311, 312 (1925).

The Tenth Circuit has stressed that as to the third factor in particular, habeas relief "must fail if there is *any* evidence of probable cause." *Peters*, 888 F.2d at 717 (citation and internal quotation marks omitted) (emphasis in original). The reviewing court need only find the existence of any such evidence; "[t]he weight and sufficiency of that evidence is for the determination of the committing court." *Escobedo v. United States*, 623 F.2d 1098, 1102 (5th Cir. 1980) (citations omitted). In other words, the habeas process does not function as "a writ of error" and "is not a means for rehearing what the magistrate [judge] already has decided." *Fernandez*, 268 U.S. at 312. The habeas petitioner bears the burden to show by a preponderance of the evidence that he is held contrary to law. *See Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011).

**DISCUSSION**

In this habeas petition, Petitioner does not claim that Judge Garcia lacked authority or jurisdiction over him during the Extradition Proceedings, and he does not argue that the offense for which he has been charged is not within the extradition treaty between the United States and Mexico. For that matter, Petitioner does not challenge the existence of probable cause to believe

that Manuel Villa is guilty of aggravated homicide. Instead, he argues that there was insufficient evidence of probable cause presented on the issue of identity during his extradition proceedings.

Key to Petitioner's argument is language appearing in both the original Spanish version and the unofficial English translation of the Extradition Request.[6] According to the English translation, Exhibit 12 is labeled, "Identification proceedings . . . by Karina Carrete Vásquez who, once she had the photo line-up displayed before her, recognized in the photograph marked with the number two (2), the person she knows as being MANUEL VILLA." Exhibit 14 is described, "A photograph of MANUEL VILLA, which was used at the identification proceedings referred to in the above paragraph."

Petitioner does not challenge the veracity of the extradition documents stating that Carrete identified Photo No. 2 in a photo array as a picture of Manuel Villa, the sought fugitive. Petitioner also concedes that the picture that appears as Photo No. 2 in the photo array attached to Exhibit 12 is, in fact, a photograph of himself. However, he alleges that this photograph was not originally used in that photo array. Instead, Petitioner asserts that the photograph in Exhibit 14 was used as Photo No. 2 in the original photo array, that he is not the same person as the one appearing in that photograph, and that Carrete identified this other person as Manuel Villa. Petitioner insists that Mexico must have replaced the picture from Exhibit 14 with the photograph that now appears in Exhibit 12 sometime after Carrete identified the true fugitive but before Mexico sent the extradition documents to the United States. In other words, Petitioner claims that the photo array, authenticated by the Republic of Mexico before its submission to the United States, was doctored prior to its inclusion as part of Exhibit 12.

---

[6] Petitioner does not expressly note any fault in the unofficial English translation of these passages, and his attorney affirmatively stated at the extradition hearing before Judge Garcia that there was no error in translation. *See* Extradition Proceedings, Doc. 22 at 29 (D.N.M. Nov. 25, 2013).

Respondent, for his part, simply notes that Petitioner has been identified as the person in Photo No. 2 and that Carrete identified the person in Photo No. 2 as the fugitive Manuel Villa. He observes that Mexico has not claimed that Carrete identified the person depicted in Exhibit 14 as Manuel Villa; in fact, he says, all Mexico has suggested is that Manuel Villa adopted the alias Manuel Galván Ontiveros at some point.

The insurmountable weakness in Petitioner's argument is that none of the extradition materials state or imply that Mexico altered the photo array in any way after holding the identification proceedings in Durango. The statement in the Extradition Request simply says that Exhibit 14 was "[a] photograph of Manuel Villa . . . used at the identification proceedings." It does not state how Exhibit 14 was used, that Exhibit 14 was featured in any photo array, or that Carrete identified the person in Exhibit 14 as Manuel Villa. Despite Petitioner's repeated insistence to the contrary, neither the English translation nor the Spanish original of that statement says that Exhibit 14 was "*the* photograph of Manuel Villa" used at the identification proceedings, let alone the one used in the photo array.[7]

To the contrary, the Extradition Request description for Exhibit 12 states that Carrete identified "the photograph marked with the number two (2)" in "the photo line-up" as Manuel Villa, and all parties concede that the photograph marked with the number two in the attached photo array depicts Petitioner. Whatever ambiguity is presented in the description of Exhibit 14 is overwhelmed by the clear language found in the description of Exhibit 12. There has been no evidence presented to challenge the authentication of Exhibit 12, and as such Judge Garcia was required to presume that the evidence provided by Mexico in that Exhibit was accurate. *See In re Extradition of Marzook*, 924 F. Supp. 565, 592 (S.D.N.Y. 1996); *see also* 18 U.S.C. § 3190.

---

[7] In fact, the original Spanish lacks any article such as "a" or "the" at all, simply referring to Exhibit 14 as "[f]otografía de MANUEL VILLA."

Given these principles, I conclude that competent evidence existed before Judge Garcia to support a finding of probable cause that Petitioner was both the person sought by Mexico for the charged crime and the person who committed the crime. Following the extradition hearing, Judge Garcia found that Mexico has identified Manuel Villa by numerous aliases, including Manuel Galván Ontiveros and Iván Villa, a finding that was supported by Manuel Villa's June 2007 arrest warrant and numerous other documents. He also found that Mexico has charged Manuel Villa with the offense of aggravated homicide and discussed the evidence supporting this charge in some detail. Finally, and crucially, Judge Garcia found that Carrete identified Petitioner as Manuel Villa, a person known to her and known to live at the address where the victim's body was discovered, by selecting Photo No. 2 from a six-person photo array. "An identification based on a single photograph may be competent evidence of identity in an extradition proceeding." *Manta v. Chertoff*, 518 F.3d 1134, 1145 (9th Cir. 2008) (citing *Escobedo*, 623 F.2d at 1102). As such, Petitioner has failed to meet his burden of showing that there was no evidence warranting a finding that there was a reasonable ground to believe that Petitioner is guilty of the charged crime. *See Smith*, 82 F.3d at 965.

Petitioner asserts that there was other evidence, both in the extradition packet and presented during the Extradition Proceedings, to support the conclusion that he is not the person sought for the aggravated homicide in question. Specifically, he points to differences in appearance between the persons depicted in the Exhibit 12 photo array and Exhibit 14, as well as competing birth certificates from the State of Durango and from Cook County, Illinois. He also cites the testimony of Genoveva Mares that she is Petitioner's mother as set forth in the Illinois birth certificate, that the person depicted in Exhibit 14 is not her son, and that she has no knowledge of any matters relating to Manuel Villa or the Durango birth certificate.

Although I am aware of the existence of this evidence and am mindful of its potential exculpatory value, the fact remains that the Court is constrained by a narrow standard of review in this habeas action and may not reweigh the evidence already considered by Judge Garcia. *See Escobedo*, 623 F.2d at 1102; *see also Fernandez*, 268 U.S. at 312. Indeed, even Judge Garcia's authority was limited once evidence of probable cause had been presented, as "the function of the committing magistrate [in an extradition proceeding] is to determine whether there is competent evidence to justify holding the accused to await trial, and not to determine whether the evidence is sufficient to justify a conviction." *Collins v. Loisel*, 259 U.S. 309, 316 (1922). Since there was such evidence, "this court has no power to review [Judge Garcia's] finding." *See id.* (citations omitted). Whatever evidence there may be that Petitioner is not the person sought by Mexico, the identification of Petitioner as Manuel Villa by Carrete was "sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt." *In re Extradition of Atta*, 706 F. Supp. 1032, 1050 (E.D.N.Y. 1989) (quotation omitted).

"A finding of extradition signals the start, rather than the conclusion, of litigation of the fugitive's guilt or innocence. As opposed to a final judgment, it is truly an interlocutory order, more akin to a preliminary hearing on criminal charges." *Hooker v. Klein*, 573 F.2d 1360, 1367 (9th Cir. 1978). If Petitioner is extradited, he will have opportunities to establish whether he is or is not guilty of the offense in question. However, it was not Judge Garcia's role to determine whether the evidence establishes Petitioner's guilt. *See Collins*, 259 U.S. at 316. Rather, his role was to determine whether probable cause existed to support extradition. *See Peters*, 888 F.2d at 717. Judge Garcia's conclusion that such probable cause was present was supported by competent evidence. Petitioner is therefore not entitled to habeas relief.

## CONCLUSION

For the reasons stated herein, I recommend that the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. 1) be DENIED.

> **THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

*William P. Lynch*
WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.